No. 58,900

DON BILLY NOBLE, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(727 P.2d 473)

Opinion filed October 31, 1986.

*Rosanne Piatt*, assistant appellate defender, of Topeka, argued the cause, and *Benjamin C. Wood*, chief appellate defender, of Topeka, was with her on the brief for the appellant.

*Ann L. Smith*, assistant county attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Sally Davis Pokorny*, county attorney, was with her on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: The petitioner, Don Billy Noble, is appealing the denial of his K.S.A. 60-1507 motion.

On February 2, 1983, before Judge Floyd Van Palmer, the petitioner pled guilty to nine felony counts: one count of burglary (K.S.A. 21-3715); two counts of sexual exploitation of a child (K.S.A. 21-3516); one count of attempted sexual exploitation of a child (K.S.A. 21-3516 and 21-3301); four counts of indecent liberties with a child (K.S.A. 21-3503[1][b]); and one count of aggravated burglary (K.S.A. 21-3716). On March 30, 1983, the petitioner was sentenced by Judge Richard A. Medley. Over two years later, on May 2, 1985, the petitioner filed a

motion pursuant to K.S.A. 60-1507 attacking the constitutionality of his sentence. A full hearing on the petitioner's motion was held by the sentencing court and his motion was denied. The petitioner has duly perfected an appeal from the denial of his motion.

The petitioner asserts that, because the statutory requirements of K.S.A. 1982 Supp. 22-3210 were not satisfied when the court accepted the defendant's guilty pleas, the petitioner must be allowed to withdraw his pleas of guilty.

The petitioner first argues the court failed to inform him of the consequences of his pleas and of the maximum penalty provided by law which may be imposed upon acceptance of the pleas; the court failed to determine that he pled voluntarily and with an understanding of the nature of the charges and consequences of the pleas; and the court failed to find a factual basis for the pleas.

K.S.A. 1985 Supp. 22-3210 sets the statutory guidelines for the acceptance of guilty pleas which are applicable to this case:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

"(1) The defendant or counsel for the defendant enters such plea in open court; and

"(2) in felony cases the court has informed the defendant of the consequences of the plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

"(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

"(4) the court is satisfied that there is a factual basis for the plea.

"(b) In felony cases the defendant must appear and plead personally and a verbatim record of all proceedings at the plea and entry of judgment thereon shall be made."

Although the statute has been amended since the petitioner pled guilty in 1983, the amendments do not involve the issues on appeal.

This statute embodies the due process requirements as interpreted by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969); *State v. Alsup*, 239 Kan. 673, 675, 722 P.2d 1100 (1986); *Trotter v. State*, 218 Kan. 266, 268-69, 543 P.2d 1023 (1975). *Boykin* added the due process requirement that the record must affirmatively disclose a knowing and voluntary plea. *Brady v. United States*, 397 U.S. 742, 747-48 n.4, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970).

In *Trotter v. State*, 218 Kan. 266, this court held that failure to comply strictly with the explicit requirements of 22-3210 is harmless error if, upon review of the entire record, it can be determined the pleas were knowingly and voluntarily made. 218 Kan. at 269. Strict compliance is not mandatory if the purpose of the rule is otherwise served. *James v. State*, 220 Kan. 284, 287, 553 P.2d 345 (1976).

Here, the defendant entered his guilty pleas at the time of arraignment. The arraigning court did not inform the defendant of the maximum penalties which could be imposed under law.

In *Underwood v. State*, 214 Kan. 633, 522 P.2d 457 (1974), the petitioner argued on his 60-1507 motion that his sentence should be vacated because the trial court failed to inform him of the maximum penalty which could be imposed by law. In reviewing the record, this court noted that the petitioner's attorney testified at the evidentiary hearing that he had informed the petitioner of the possible sentence that could be imposed according to Kansas law. The guilty plea was found to be voluntary and understandingly made.

Here, the petitioner waived a preliminary hearing and the reading of each of the separate counts. The petitioner did have a copy of the information and in the information after each charge was the classification of the crime and the minimum and maximum penalty, *e.g.*, "Class C felony 3-5 to 10-20." When asked by the arraigning court whether the petitioner had gone over the information in detail with his attorney, the petitioner responded, "Yes." However, there is nothing in the record to indicate *affirmatively* that the petitioner's counsel had informed him of the maximum possible sentence.

The State argues the statute was satisfied because the information was read, the penalty explained, and the petitioner given a copy of the information at his first appearance on October 19, 1982. The petitioner's guilty plea was accepted at his arraignment February 9, 1983, nearly four months later. The Illinois court rejected a similar argument of substantial compliance in *People v. Louderback*, 137 Ill. App. 3d 432, 484 N.E.2d 503 (1985), where there was a five-month lapse between a defendant's arraignment and acceptance of his guilty plea. We agree with the Illinois court and reject the State's argument. K.S.A. 1985 Supp. 22-3210(a)(2) is not satisfied by an explanation of the penalties nearly four months before a guilty plea is accepted.

Our prior case law holds it is not necessary to comply strictly with the mandates of 22-3210 if the purpose of the statute is otherwise served. Under the facts of this case, we find the purpose of the statute requiring the petitioner to be informed of the maximum possible sentence which could be imposed by law was served. The copy of the information which the petitioner had received and had gone over in detail with his attorney contained the minimum and maximum possible sentence for each count with which the petitioner was charged. The petitioner had waived the formal reading of the information at his arraignment. Plea negotiations had been entered into with the prosecutor resulting in the prosecutor recommending a certain sentence. The prosecutor had recommended the maximum penalty on the one Class D felony and the three Class E felonies.

It is strongly recommended that satisfaction of the requirements of K.S.A. 1985 Supp. 22-3210(a)(2) show affirmatively on the record in order to reliably establish that a plea has been voluntarily and intelligently entered. However, on the facts in this case, where there has been substantial compliance, we find no prejudicial error.

Next the petitioner argues the court failed to determine that his plea was made voluntarily and with an understanding of the nature of the charges and the consequences of the plea.

The following colloquy took place at the arraignment:

"MR. HILDRETH: We are ready for arraignment today.

"THE COURT: Mr. Noble, have you talked — told your attorney, Mr. Hildreth absolutely everything about these charges from your viewpoint and held nothing back from him?

"DEFENDANT NOBLE: Yes, I have.

"THE COURT: Anything that you know about these charges at all, that Mr. Hildreth also knows?

"DEFENDANT NOBLE: Yes, Your Honor.

"THE COURT: And Mr. Hildreth has explained to you the possible responses that you might make to these charges?

"DEFENDANT NOBLE: Yes, Your Honor.

"THE COURT: And in that case, you are ready for arraignment, for the time which you make your formal response to these charges?

"DEFENDANT NOBLE: Yes.

"THE COURT: All right then, we will proceed to arraignment.

"MR. HILDRETH: We would, as far as that is concerned, waive the reading of each of the separate counts, if the Court would wish to, and in that matter, there are nine of them altogether.

"THE COURT: All right. Mr. Noble, you understand that you have the right if you wish to have the entire information read to you at this time?
"DEFENDANT NOBLE: Yes, Your Honor.
"THE COURT: So, you have the charges fully in mind?
"DEFENDANT NOBLE: Yes, Your Honor.
"THE COURT: But, you have been furnished a copy of the Information, have you not?
"DEFENDANT NOBLE: Yes.
"THE COURT: Mr. Hildreth has a copy of the Information?
"DEFENDANT NOBLE: Yes.
"THE COURT: And you have gone over that in detail with Mr. Hildreth?
"DEFENDANT NOBLE: Yes.
"THE COURT: Mr. Hildreth has offered to the Court to waive, or give up the reading of each of these counts to you, and do you concur in this request?
"DEFENDANT NOBLE: Yes, sir.
"THE COURT: You understand what you are charged with?
"DEFENDANT NOBLE: Yes, Your Honor."

The court proceeded to hear the petitioner's pleas of guilty to the nine counts. The counts were described by the court by their classification of felony and their common names. After hearing the pleas, but before accepting them, the judge inquired of the petitioner:

"THE COURT: Now, Mr. Noble, before the Court can accept a plea of guilty offered to these charges, it must be satisfied that you make these pleas for only one reason, mainly because you are, in fact, guilty—and that's because you are guilty of what you are charged with; do you understand that?
"DEFENDANT NOBLE: Yes.
"THE COURT: Furthermore, it cannot be the result of any threats or promises of leniency or coercion of any kind.
"DEFENDANT NOBLE: Yes, Your Honor.
"THE COURT: You told me that you have discussed these charges with Mr. Hildreth and you told him absolutely everything about it from your viewpoint?
"DEFENDANT NOBLE: Yes.
"THE COURT: And I am sure that Mr. Hildreth has explained to you that each and every one of these charges is made up of several essential elements?
"DEFENDANT NOBLE: (Nods head affirmatively)
"THE COURT: And in order for you to be guilty of the particular charge in each count, that you must have committed each and every one of those essential elements.
"DEFENDANT NOBLE: Yes.
"THE COURT: And you stand there and tell this Court that you have, in fact, committed each and every one of those essential elements as to each of the charges?
"DEFENDANT NOBLE: Yes, Your Honor.
"THE COURT: And you are satisfied with the way that Mr. Hildreth is representing you and has represented you in this case?
"DEFENDANT NOBLE: Yes.

"THE COURT: All right. Now, Mr. Noble, Mr. Hildreth has explained to you, has he not, that if the Court accepts your plea of guilty, that you would have waived or given up many of your very important rights?

"DEFENDANT NOBLE: Yes.

"THE COURT: Chief among those, being a right to trial by jury, with the burden being upon the State to prove your guilt beyond a reasonable doubt, you understand that?

"DEFENDANT NOBLE: Yes.

"THE COURT: Secondly, the right to confront and cross-examine witnesses against you.

"DEFENDANT NOBLE: Yes.

"THE COURT: And also the right to compel the attendance of witnesses in your own behalf?

"DEFENDANT NOBLE: Yes.

"THE COURT: And the right to an appeal on all, except a very few narrow constitutional grounds, or challenge the jurisdiction of the Court, is that correct?

"DEFENDANT NOBLE: Yes.

"THE COURT: And do you understand that if the Court accepts your pleas of guilty that you give up all of those rights?

"DEFENDANT NOBLE: Yes, Your Honor.

"THE COURT: You stand there, Mr. Noble, and tell me of your own free will and accord that you admit all these offenses, Counts One through Nine, as charged in the Information?

"DEFENDANT NOBLE: Yes.

"THE COURT: And that no one has made you do this under any threats or promises of leniency or any type of coercion, is that right?

"DEFENDANT NOBLE: That's right.

"THE COURT: Mr. Hildreth, does—Do these pleas of guilty comport with your understanding of the facts in each of these instances?

"MR. HILDRETH: They do.

"THE COURT: Very well, Mr. Noble, the Court finds that the pleas of guilty to each of these counts is knowingly and intelligently and voluntarily given and the Court accepts the pleas of guilty and enters a judgment of guilt as to each of these nine counts. All right, the Court will order a pre-sentence investigation, pursuant to Statute, with report to this Court and will set sentencing for March the 30th, I believe it is."

On appeal the defendant argues the above colloquy does not satisfy the statutory requirements because the arraigning court did not establish *what* the petitioner understood. The petitioner points to three things to show he didn't understand the nature of the charges.

First, the petitioner directs our attention to his mental competency evaluation where he was found to be in the dull to normal intelligence range. The petitioner also argues that he attended special education classes during his schooling until he finally dropped out of school in the twelfth grade.

Second, the petitioner points to his responding, "I guess guilty" to the court when the court asked how he pled to count I, the burglary count, to show he didn't understand the nature of the charges.

Third, the petitioner points to statements he made after sentencing when he gave his version of the offenses to the clinical evaluator at the State Reception and Diagnostic Center. Petitioner argues these statements (which are not part of the record but are cited in the petitioner's brief) illustrate that he did not understand the elements of burglary as compared to aggravated burglary. The statements are: "I entered a vacant home with one of the girls. I didn't break in. I just walked in. That means aggravated burglary in Kansas. Nothing was taken."

The petitioner cites *Outland v. State*, 219 Kan. 547, 548 P.2d 725 (1976), to support his mental competency argument. There the defendant argued he was incompetent when his pleas of guilty were entered. The court accepting his pleas was aware of a report from a hospital staff psychiatrist at Larned advising the court the defendant was found to be insane at the time he committed the offenses, and that he had occasionally been treated for mental problems over the years. This court ruled that the report and other circumstances shown in the record should have alerted the trial court to the possibility of continuing insanity and should have caused the court to inquire into the defendant's capacity to plead. 219 Kan. at 548.

The facts before us today are distinguishable. Here, the mental competency evaluation was conducted and it resulted in a finding that the petitioner was competent to stand trial and understood the nature and purpose of the proceedings against him. The report stated that although the petitioner didn't know the exact phrasing of the charges against him, he estimated there were seven charges in all which involved "fondling girls and taking pictures." The two charges the petitioner didn't include were the aggravated burglary and burglary charges.

In response to the second and third incidents cited by the petitioner to show he didn't understand the nature of the charges, the petitioner told the arraigning court he understood what he was charged with and had those charges fully in mind. To all other eight counts, including the aggravated burglary, the petitioner responded "Guilty" when asked how he pled. He had

received a copy of the information and had gone over it in detail with his attorney. Each count in the information gives the name of the young child involved, which would help the petitioner to distinguish among the different counts. The confusing statements in reference to the elements of burglary and aggravated burglary were made *after* sentencing. The petitioner did not move to withdraw his guilty pleas after sentencing until nearly two years later.

The defendant in *Henderson v. Morgan,* 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976), pled guilty to second-degree murder while the indictment spelled out the elements of first-degree murder. The lower court ruled the plea was involuntary because the defendant was not informed of the elements of second-degree murder, *i.e.,* that he had to intend to cause the victim's death. The government argued to the United States Supreme Court that if the lower court's finding was affirmed the floodgates would be opened to challenging pleas because frequently the record will not contain a complete enumeration of the offense charged. The Court stated:

"We think petitioner's fears are exaggerated.

"Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, *it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.*" (Emphasis added.) 426 U.S. at 647.

We find the petitioner's pleas were made voluntarily with an understanding of the nature of the charges. The petitioner argues he wasn't informed of the consequences of his pleas. The court informed the petitioner of and the petitioner waived his right to a trial by jury, his right to confront witnesses, his right to compel the attendance of witnesses, and his right to appeal to a certain extent. Now on appeal the petitioner argues his plea was not voluntarily and understandingly made because the arraigning court failed to inform him that by entering a plea of guilty he waived his Fifth Amendment privilege against compulsory self-incrimination. A thorough review of the petitioner's 60-1507 motion and of the transcript of the hearing on that motion discloses that the petitioner failed to raise this argument in the trial court. The petitioner cannot raise a point on appeal that was

not presented to the lower court. *State v. Handley*, 234 Kan. 454, 458, 673 P.2d 1155 (1983); *State v. Garcia*, 233 Kan. 589, 608, 664 P.2d 1343 (1983); *Lill v. State*, 4 Kan. App. 2d 40, 42, 602 P.2d 129 (1979). Therefore, we will not consider this point on appeal.

Next, the defendant argues the arraigning court failed to establish a factual basis for the plea. In establishing a factual basis for the plea the court must establish that all elements of the crime charged are present. *State v. Calderon*, 233 Kan. 87, 93, 661 P.2d 781 (1983). In *James v. State*, 220 Kan. 284, 553 P.2d 345 (1976), the trial court made no specific inquiry to establish a factual basis. K.S.A. 22-3210 was not yet in effect at the time the plea was accepted. The error was held not to be fatal under the principles of *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). The factual basis was established by the facts which were recited in the information read to the defendant. In *Widener v. State*, 210 Kan. 234, 239, 499 P.2d 1123 (1972), this court found that although the court's inquiry as to a factual basis for the plea was skimpy the statute was satisfied. There the defendant had a copy of the information, although he had waived a formal reading of the information. The information set forth the details and essential elements of the crime. The defendant had discussed the matter with his attorney. The defendant responded, "Yes" when asked if he pled guilty because "he did in fact burglarize this concession stand."

Here, the court did not state on the record it found there was a factual basis for the plea. However, the petitioner had a copy of the information and had gone over it in detail with his attorney. The information set forth the facts and the essential elements of the crimes charged. The petitioner indicated his attorney had explained the essential elements of each charge and represented to the court he committed "each and every one of those essential elements." We find the record here presented establishes a factual basis for the pleas.

The petitioner next argues his pleas were not knowingly and voluntarily made because the arraigning court failed to advise him that the court was not bound by any plea negotiations before accepting his pleas of guilty.

In *State v. Byrd*, 203 Kan. 45, 50-53, 453 P.2d 22 (1969), this court approved the application of the ABA Standards for Criminal Administration as they relate to plea bargaining. In *White v.*

*State*, 203 Kan. 687, 691, 455 P.2d 562 (1969), this court recognized the caution made in *Byrd*:

"By way of admonishment we cautioned that all discussions and agreements should be based upon an understanding that such agreements are not binding upon the trial judge, and that even though a guilty plea was received as a result of a prior agreement, nevertheless, the judge was free to reach his own independent decision on whether to approve any concession upon which the agreement was premised."

The plea negotiation should be disclosed at the time the plea is entered.

"[A]s a salutary aid in determining whether a plea of guilty is voluntarily and intelligently made, we know of no reason why plea discussion resulting in a plea agreement should not be disclosed to the trial court by the parties, or why the fact should not be elicited by that court, where it exists.

. . . .

"Standards 1.5 and 3.3 (b) of the Approved Draft [of the ABA Standards Relating to Pleas of Guilty] contemplate disclosure to the court of the fact of a negotiated plea. Where plea discussion has resulted in a plea agreement, we believe bringing the matter into the open at the time the plea is entered will go far in producing a determination acceptable to all that the plea was voluntarily and intelligently made. Disclosure in open court will provide additional assurance that proper safeguards have been observed once a plea of guilty has been accepted and, at the same time, tend to dispel much of the sinister aspect heretofore attached to the practice by reason of its cloak of secrecy. We commend such disclosure." *State v. Caldwell*, 208 Kan. 674, 676, 493 P.2d 235 (1972).

No previous Kansas case has addressed the issue of a trial court's failure to inform the defendant before accepting his plea of guilty that the court would not be bound by any plea negotiations. There is a split in authority from other jurisdictions that have addressed the issue. In the following jurisdictions the plea was found to be not voluntarily given when the trial court failed to advise the accused the court would not be bound by any plea agreement. *People v. Willis*, 39 Ill. App. 3d 288, 349 N.E.2d 435 (1976) (by statute the court must inform the defendant in open court that it is not bound by the plea agreement); *State v. Runge*, 228 N.W.2d 35 (Iowa 1975) (although defendant answered yes when the trial court inquired as to whether he realized the judge had sole discretion in the matter of a sentence to be imposed, defendant was never informed of the judge's policy not to honor sentence concessions in breaking and entering cases, and, therefore, the guilty plea was not knowingly and voluntarily made); and *State v. Bonds*, 521 S.W.2d 18 (Mo. App. 1975) (no indication in record that defendant understood the court's right

to disaffirm the plea bargain and reject the State's recommendation).

The following states have ruled that although the accused was not told the court would not be bound by any plea bargains, there was no error. *McCoy v. State*, 392 So. 2d 1287 (Ala. Crim. App. 1981) (because the defendant did not object or move to withdraw his guilty pleas after sentencing there was no error for the appellate court to review); *North v. State*, 406 N.E.2d 657 (Ind. App. 1980) (although the court did not inform the defendant on the record that it would not be bound by a plea agreement, the plea agreement itself contained such a provision and the court followed the plea agreement and there was no error); and *Lilly v. Commonwealth*, 218 Va. 960, 243 S.E.2d 208 (1978) (if, upon the entire record, it appears that at any time before sentencing, the defendant was informed the court was not bound to follow a plea bargain, the defendant cannot argue his plea was not knowingly and voluntarily made).

Here, although the arraigning court failed to inform the petitioner it would not be bound by any plea negotiations, the petitioner responded to inquiry by the court at arraignment that his pleas were not made under any threats, promises of leniency, or any type of coercion. At the sentencing hearing, nearly two months later, the sentencing court asked the petitioner the following:

"THE COURT: I've also been advised that you were informed by Judge Palmer that any plea bargaining of any kind that Mr. Hildreth may have had with Mr. Chubb was not binding upon the Court, is that correct?
"DEFENDANT NOBLE: That's correct.
"THE COURT: You understand that. Whatever sentence you get here today will be based upon what I believe to be correct, you understand that?
"DEFENDANT NOBLE: Yes, sir."

When the petitioner's counsel disclosed the plea negotiation to the sentencing court he informed the court that the petitioner had been told the plea negotiation was not binding on the court.

The sentencing court did not follow the recommendations of the prosecution. Rather than having two five-to-ten year sentences running consecutively, as recommended by the prosecutor, the court sentenced the petitioner to four consecutive five-to-ten year sentences.

After sentencing, the petitioner did not move to withdraw his guilty plea. In the petitioner's 60-1507 motion he admits he is

aware the court is not bound by the terms of a plea bargain. At the hearing on the petitioner's motion, the petitioner's father testified the petitioner's counsel stated he expected the judge to go along with the prosecutor's recommendation but he didn't say that he could promise anything. In light of the above, we find the petitioner knew the court was not bound by any plea agreement and there was no error in the failure of the arraigning court to so state on the record.

Finally, the petitioner argues this court should now adopt the standard of requiring a court to announce in advance its intention to reject any plea agreement or recommended sentence concession and give the defendant the opportunity to withdraw his guilty plea.

Rule 11(e)(4) of the Federal Rules of Criminal Procedure allows the defendant to withdraw his guilty plea if the court rejects the plea agreement. The federal courts, however, have interpreted that rule to apply only to true plea agreements; the rule does not apply where the prosecutor agrees to make a sentence *recommendation* to the court. *United States v. Gaertner*, 593 F.2d 775 (7th Cir. 1979); *United States v. Henderson*, 565 F.2d 1119 (9th Cir. 1977), *cert. denied* 435 U.S. 955 (1978); *United States v. Savage*, 561 F.2d 554 (4th Cir. 1977).

The petitioner urges this court to adopt the standard set out in the ABA Standards, Relating to the Administration of Criminal Justice, The Function of the Trial Judge, § 4.1(c)(1972 approved draft), as follows:

"(c) If the plea agreement contemplates the granting of charge or sentence concessions by the trial judge, he should:

. . . .

"(iii) permit withdrawal of the plea (or, if it has not yet been accepted, withdrawal of the tender of the plea) in any case in which the judge determines not to grant the charge or sentence concessions contemplated by the agreement."

K.S.A. 1985 Supp. 22-3210(d) provides:

"A plea of guilty or *nolo contendere,* for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

In *Burden v. State*, 225 Kan. 549, 555, 592 P.2d 451 (1971), this court stated:

"If the defendant is permitted to withdraw his plea any time the sentencing judge does not accept the disposition recommended, defendant could be assured

of the recommended disposition or he could withdraw his plea of guilty. This would place the prosecutor in an unfavorable bargaining position for he would stand to lose charge concessions made in good faith. . . .

. . . .

"In summary we hold that under K.S.A. 22-3210(7) a plea of guilty may be withdrawn for good cause shown and within the discretion of the sentencing court on motion filed prior to the sentence adjudication. Refusal to follow recommended charge and sentence concessions is not in itself sufficient to constitute good cause for withdrawal of a guilty plea entered before sentence, provided the defendant was clearly advised by the court prior to entering his plea that the court was not bound by any charge and sentence concessions, and defendant was then offered a chance to withdraw said plea."

See *State v. Harrison,* 231 Kan. 489, 646 P.2d 493 (1982).

We adhere to the above language and refuse to adopt standards for the withdrawal of a guilty plea other than those stated in K.S.A. 1985 Supp. 22-3210(d).

This case and others similar to it suggest serious problems arise at the trial level concerning the application of K.S.A. 1985 Supp. 22-3210. To assure compliance with the statute a trial judge would be well advised to follow a written checklist prior to the acceptance of a plea of guilty or nolo contendere in a criminal case. It is mandatory that the trial judge require the recording of the entire proceeding so that a transcript will be available to the appellate court on review.

The judgment of the lower court denying the petitioner's K.S.A. 60-1507 motion is affirmed.