NOT DESIGNATED FOR PUBLICATION

No. 121,445

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL SCOTT BARRAGER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed September 4, 2020. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Amy L. Aranda*, assistant county attorney, Marc Goodman, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., STANDRIDGE and GARDNER, JJ.

PER CURIAM: Michael Scott Barrager appeals the district court's denial of his presentence motion to withdraw his plea. Barrager argues he showed good cause to withdraw his plea because the district court misled him about his percentage of good time credit and his term of postrelease supervision, so he did not fairly and understandingly make the plea. We disagree, as the district court reasonably found that Barrager failed to show good cause to withdraw his plea.

1

*Factual and Procedural Background*

In June 2018, the State charged Barrager with domestic battery, aggravated domestic battery, aggravated kidnapping, and stalking. On the second day of the jury trial the parties reached a plea agreement. As part of that agreement, Barrager agreed to plead no contest to three crimes: aggravated battery, attempted aggravated kidnapping, and stalking. In return, the State agreed to dismiss the domestic battery charge, to recommend a controlling sentence of 112 months, and to abstain from prosecuting any other recent criminal offense involving Barrager and the victim.

Barrager signed a tender of plea of no contest. That tender included the maximum prison sentences and fines for each crime. During the plea hearing, the district court told Barrager about the potential consequences for each crime:

> "Count 2, which is aggravated battery, this is a Level 7 person felony. The maximum penalty for that depends on your criminal history, which I don't know at this time. But the maximum—so I'm going to tell you what the maximum penalty that could be imposed on a person with the worst criminal history is and that is 34 months in the custody of the Secretary of Corrections and that would be subject to 24 months post-release supervision—no, I'm sorry, 12 months post-release supervision and you would be eligible to earn up to 20 percent good time credit.

> "Then Count—amended Count 3 is the next count that you've offered to plead no contest to and that's attempted aggravated battery—aggravated kidnapping, I'm sorry. This is a Severity Level 3 person felony. The maximum penalty for that is 247 months in the custody of the Secretary of Corrections. All of these have the possibility of a fine as well, if the Court finds you can pay the fine.

> "The last one which you've offered to enter a plea is Count 5, stalking. This is a Severity Level 9 felony. The maximum penalty for that is 17 months in the custody of the Secretary of Corrections and also a fine of up to $100,000."

After Barrager affirmed that he understood the consequences of his plea and waived his rights, the district court found he had made his plea voluntarily and "knowledgeably."

Before sentencing, Barrager moved pro se to withdraw his pleas. Among other allegations, Barrager accused the State and his attorney of having tricked him into signing the plea agreement. In a supplemental motion, Barrager's new attorney argued that Barrager had good cause to withdraw his plea because the district court had incorrectly advised him about the term of postrelease supervision, the amounts of the fines, and how much good time credit was available. He pointed out that the district court stated Barrager could earn up to 20% good time credit on the aggravated battery conviction and would be subject to 12 months of postrelease supervision. But the district court failed to say that the aggravated battery conviction was not the base sentence, so it would not determine his potential for good time sentence mitigation, nor his controlling term of postrelease supervision. Instead, Barrager's controlling sentence was his Level 3 felony—attempted aggravated kidnapping. Barrager was eligible for 15% good time credit and subject to 36 months of postrelease supervision on the controlling sentence.

The district court held an evidentiary hearing on Barrager's motion to withdraw his pleas, then denied the motion. As to the plea colloquy, the district court found that no one had misled Barrager, and that he had been given accurate information. Thus, he failed to show good cause to withdraw his plea. The district court sentenced Barrager to 112 months in prison with 36 months of postrelease supervision and 15% potential good time credit.

Barrager timely appeals.

*Did the District Court Abuse its Discretion in Denying Barrager's Presentence Motion to Withdraw His Plea?*

Barrager argues that he showed good cause to withdraw his plea and that the district court failed to meet the requirements or purpose of K.S.A. 2019 Supp. 22-3210(a)(2). That statute requires the court in felony cases to inform the defendant of the consequences of the plea, and of the maximum penalty that the court may impose. He claims the district court's statements misinformed him about his good time credit eligibility and the correct term of postrelease supervision, and those failures caused him to enter "an unknowing and involuntary plea."

*Standard of Review*

We review the denial of a presentence motion to withdraw a plea and the determination that the defendant has not met his burden to show good cause under the abuse of discretion standard. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it stems from an error of law; or (3) it stems from an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party seeking to withdraw the plea—here, Barrager—bears the burden of establishing the district court's abuse of discretion. On appeal, we defer to the district court's fact-finding, declining to reweigh evidence or assess witness credibility. See *Woodring*, 309 Kan. at 380.

*Analysis*

Under K.S.A. 2019 Supp. 22-3210(d)(1), a defendant may withdraw a plea for good cause and within the discretion of the district court at any time before sentencing. In determining whether the defendant has shown good cause, the district court typically considers three factors, commonly known as the *Edgar* factors:  (1) whether competent

4

counsel represented the defendant; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Newman*, 311 Kan. 155, 158-59, 457 P.3d 923 (2020); *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006). These factors are not exclusive. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). The district court considered the three *Edgar* factors here.

When, as here, the district court finds that the defendant failed to show good cause, it must deny the defendant's request to withdraw his plea. *State v. Brown*, 46 Kan. App. 2d 556, 562, 263 P.3d 217 (2011). To overturn the district court, a defendant "must establish that no reasonable person would have agreed with the district court's assessment of the three *Edgar* factors and its ultimate conclusions that [the defendant] failed to establish good cause to withdraw his plea." *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017). We examine the district court's assessment of these three factors below.

1. *Whether competent counsel represented the defendant*

The district court found that Paul Dean, Barrager's trial attorney, gave Barrager accurate information regarding his plea. It found "Dean's representation of [Barrager] showed a competent attorney zealously doing what he thought was best for his client. . . . [Barrager] was represented by competent counsel." Barrager does not challenge these findings on appeal or assert that he had incompetent counsel.

2. *Whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of*

Barrager claims that the district court misled him into believing he would be eligible for 20% good time credit and subject to only 12 months of postrelease supervision. Barrager asserts that the district court did so by stating the good time

5

percentages and postrelease terms for the noncontrolling crime of aggravated battery but failed to address the same terms with respect to the controlling attempted aggravated kidnapping conviction. In fact, Barrager was eligible for 15% good time credit and subject to 36 months of postrelease supervision on the controlling sentence.

In its memorandum decision, the district court found that no one misled Barrager, and that he was given accurate information. Our review of the record confirms those findings. At the evidentiary hearing on Barrager's motion to withdraw his plea, Dean testified. He said that about a week after his plea, Barrager accused Dean of having mislead him by telling him he would receive 20% good time credit. The next day, Dean met with Barrager and showed him his notes from just before the plea hearing. Dean's notes showed they had discussed that Barrager's good time credit percentage was 15%, not 20%. After that meeting, Dean understood that Barrager was satisfied that he had not tried to trick him.

Dean also testified about the events before the plea. Dean visited Barrager the night after the first day of trial. Barrager told Dean that he did not like how things were going, and Dean agreed to pursue a new plea deal. That night, Dean asked the State for a modified plea deal. He received the new plea offer the next morning, met with Barrager, and read the proposed plea out loud to him.

When asked if Barrager would have been confused by the district court's statements at the plea hearing, Dean responded:

> "I'm going to say no. Mr. Barrager and I spent a good amount of time going over the specific math. He knew the time frame, he knew what the Good Time calculation should have been. This is not Mr. Barrager's first time in the courtroom or his first run-in with the Sentencing Guidelines. That would be my opinion."

6

Dean also testified that he had discussed the sentencing grid and each crimes' possible sentence at his initial meeting with Barrager. He believed that the judge had allowed enough time for Barrager to decide about whether to plea. And Dean's notes from the plea hearing showed that he had discussed with Barrager the 15% good time credit. Although Dean did not specifically recall discussing postrelease supervision with Barrager, he generally discusses it with his clients. And the correct postrelease supervision amount was on Barrager's sentencing grid form that Dean testified Barrager was familiar with.

Barrager also testified at the hearing. He said that Dean had read the plea advisory to him and he had signed it. As for his good time credit percentage, he said:

"My recollection he said that I would get 15 percent for the Level 3 charge and then I would get 20 percent for the Level 7 and 9, so—but which in the—he made it seem like I would get—I would get 15 percent, but only for the Level—for the months of the level—of the Level 3. But then as soon as them months were done that it would reduce down to 20 percent for the other levels since they were under and they were at the 20 percent level. He wrote it down on a piece of paper."

Barrager also stated that he was not familiar with the Kansas Sentencing Guidelines, that he did not remember seeing the sentencing grid during the plea, and that Dean had spent only about five minutes discussing the plea.

As to Barrager's postrelease term, the record lacks evidence that Barrager was confused about it. Instead, the record contains evidence that would support the district court's findings. Dean testified that he generally discusses postrelease supervision with his clients and that Barrager was familiar with the sentencing guidelines. And the sentencing guidelines grid includes a 36-month term of postrelease supervision for attempted aggravated kidnapping. The district court evidently credited Dean's testimony

7

over Barrager's on this point. This court does not reweigh evidence or assess witness credibility. See *Woodring*, 309 Kan. at 380.

The record also fails to support Barrager's assertion that the district court misled him about his good time credit percentage. Dean told Barrager the correct percentage, Barrager admitted that Dean had told him the correct percentage, and nothing shows that Barrager believed he would receive 20% good time credit and his postrelease supervision would be 12 months based on the district court's statements.

The district court did not abuse its discretion in finding Barrager failed to show he was misled, coerced, mistreated, or unfairly taken advantage of.

3. *Whether the plea was fairly and understandingly made*

Barrager also argues the district court's failure to tell him of his postrelease supervision and eligible good time credit for his attempted aggravated kidnapping conviction caused him to enter his plea unknowingly and involuntarily.

We weigh this third *Edgar* factor in light of certain constitutional and statutory requirements that attach to a defendant's plea. *Edgar*, 281 Kan. at 36. "To be constitutionally valid, guilty or no contest pleas and their resulting waiver of rights '"not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."'" *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 (2007). A court considering a defendant's plea of guilty or no contest must inform the defendant about the rights he is waiving, the nature of the charges, and the direct consequences of his plea. See *Brady v. United States*, 397 U.S. 742, 755-57, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). And the record must affirmatively disclose that the defendant made the plea knowingly and voluntarily. *State v. Beauclair*, 281 Kan. 230, 237, 130 P.3d 40 (2006).

K.S.A. 2019 Supp. 22-3210(a) embodies due process requirements and adds statutory conditions precedent to the acceptance of a plea. *Edgar*, 281 Kan. at 37. Under this statute, a court considering a defendant's plea must determine—and the record must affirmatively disclose—that the defendant enters his plea voluntarily and with an understanding of its consequences. *Beauclair*, 281 Kan. at 237. That statute requires a court to inform "the defendant of the consequences of the plea, including the specific sentencing guidelines level . . . and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." K.S.A. 2019 Supp. 22-3210(a)(2).

The failure to strictly comply with K.S.A. 2019 Supp. 22-3210 may be reversible error unless a review of the entire record shows that the plea was knowingly and voluntarily made and otherwise accepted by the trial judge in compliance with the statute. *State v. Ebaben*, 294 Kan. 807, 816, 281 P.3d 129 (2012). The inquiry is whether the failure to comply makes the defendant not fully understand the nature of the charge or consequences of entering a plea. See *Edgar*, 281 Kan. at 37-38.

*Postrelease supervision*

Postrelease supervision is a direct penal consequence of a plea. *State v. Moody*, 282 Kan. 181, 195-96, 144 P.3d 612 (2006); *State v. Barahona*, 35 Kan. App. 2d 605, Syl. ¶ 7, 132 P.3d 959 (2006). So a district court fails to follow K.S.A. 2019 Supp. 22-3210(a)(2) if it does not inform the defendant of the mandatory supervised parole or postrelease supervision period. Yet a district court does not violate a defendant's due process rights by failing to advise a criminal defendant of the appropriate postrelease supervision period, if the defendant's actual prison sentence and mandatory postrelease supervision do not exceed the maximum penalty that the district court stated to the defendant at the plea hearing. *Barahona*, 35 Kan. App. 2d at 614; see *State v. Terning*, 57 Kan. App. 2d 791, 795-96, 460 P.3d 382 (2020) (applying *Barahona* and holding no due process violation when the district told the defendant, who essentially had a lifetime

9

sentence, that he would have 36 months postrelease supervision, instead of the required lifetime postrelease supervision). Such is the case here.

Although the district court failed to advise Barrager of the proper postrelease supervision period for his crime of attempted aggravated kidnapping, the district court did advise Barrager that the maximum penalty for his crime of attempted aggravated kidnapping was 247 months. And the district court sentenced Barrager to 112 months in prison with a 36-month postrelease supervision term. So Barrager's actual prison sentence and mandatory postrelease supervision are less than the maximum penalty that the district court stated at the plea hearing. Here, as in *Barahona* and *Terning*, the district court did not violate Barrager's due process rights, and the purpose of K.S.A. 2019 Supp. 22-3210 was fulfilled. See *Beauclair*, 281 Kan. at 238; *Noble v. State*, 240 Kan. 162, 164, 727 P.2d 473 (1986) (strict compliance with K.S.A. 22-3210 is not mandatory if purpose of the statute is otherwise served).

### *Good time credit percentage*

At the plea hearing, the district court did not inform Barrager that he would be eligible for only 15% good time credit. But we need not decide whether a district court must inform a defendant of his good time credit percentage under K.S.A. 2019 Supp. 22-3210. This is because the record supports the district court's finding that Barrager understood the plea deal and his potential sentence, which included a 15% good time credit percentage for attempted aggravated kidnapping.

Barrager's own statements confirm that he understood he would be eligible for 15% good time credit for attempted aggravated kidnapping—the Level 3 felony:

"My recollection he said that I would get 15 percent for the Level 3 charge and then I would get 20 percent for the Level 7 and 9, so—but which in the—he made it seem

10

like I would get—I would get 15 percent, but only for the Level—for the months of the level—of the Level 3. But then as soon as them months were done that it would reduce down to 20 percent for the other levels since they were under and they were at the 20 percent level. He wrote it down on a piece of paper."

Dean testified also that Barrager understood that he would receive 15% good time credit.

The record thus confirms that Barrager's plea was a "'knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences.'" *Edgar*, 281 Kan. at 36-37.

*Alternative reason to set aside plea*

The district court's conclusion that Barrager fully understood the plea was based in part on Barrager's admission that he had an alternative reason for wanting to set it aside:

> "A review of the tender of plea signed by the defendant, the transcript of the plea hearing itself conducted by Judge Fairchild and the testimony of Mr. Dean persuades this Court the defendant fully understood the nature and consequences of his plea as required by statute. It should also be noted Mr. Dean testified the defendant's original reason for seeking to set aside his plea was the realization that the aggravated nature of his convictions would result in a higher security classification for the defendant at DOC. This causes the Court to question any assertion by the defendant that he did not fully understand the consequences of his plea."

Barrager fails to show that the district court abused its discretion by denying his motion to withdraw his plea.

Affirmed.