No. 69,019

STATE OF KANSAS, *Appellee*, v. KENNETH E. MORRIS, *Appellant*.

(869 P.2d 739)

Opinion filed March 11, 1994.

*M. Kristine Paredes*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*John J. Gillett*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant, Kenneth E. Morris, appeals from the district court's denial of his motion to withdraw his guilty plea to a charge of rape. He contends that the district court failed to follow K.S.A. 22-3210 before accepting his plea because it (1) failed to adequately advise the defendant of the maximum penalty and (2) failed to determine whether his plea was entered vol-

untarily with the understanding of the charge and the consequences of the plea. We affirm.

In April 1990, Kenneth Morris was charged in a five-count complaint with rape, aggravated criminal sodomy, attempted aggravated criminal sodomy, aggravated sexual battery, and sexual battery. The defendant had been convicted of a felony offense in a previous case and was still on probation for that offense. On December 13, 1990, the defendant appeared for jury trial on the five charges. On that same date the defendant also appeared on a motion for revocation of his probation from the earlier felony conviction.

The record on this appearance establishes that the defendant with his counsel, David K. Clark, and the State through its attorney, John J. Gillett, entered into an agreement regarding the disposition of all charges and the revocation motion:

"MR. GILLETT: "Your Honor, the defendant is going to be entering a plea of guilty to the count of rape, to be sentenced to 15 years to life, that will be consecutive to the sentence by law under 89 CR-31 [earlier felony conviction] in which we're dropping a Motion to Revoke his probation. The remaining time of probation he has on that would run during the same period of time that we're recommending 10 years' supervised probation on this new charge. He will have Court costs, I believe Mr. Clark is appointed. He'll have those things to reimburse on that. He will be ordered into counseling, and to abide by whatever the counselor says, and have the other usual terms and conditions. The charge of aggravated sodomy, attempted aggravated sodomy, aggravated sexual battery will all be dismissed.

"THE COURT: The particular count being pled guilty to is Count 1 in the Information?

"MR. CLARK: I believe that's correct, Judge.

"THE COURT: And that's a Class B felony.

"MR. GILLETT: That's correct. Sentence on that would be 15 to life. And the State would have sufficient evidence to obtain a conviction on that count in the event the matter would have gone to jury trial.

. . . .

"THE COURT: All right, what is going to be the conditions recommended? Pay the costs, probation supervision fee?

"MR. GILLETT: Yes.

"THE COURT: Required counseling.

"MR. GILLETT: Yes.

"THE COURT: Inpatient or outpatient.

"MR. GILLETT: Whatever the —

"THE COURT: All right, as per the Court Services Officer. Anything else specifically?

"MR. CLARK: Nothing specifically, Judge, but I will advise the Court that I've talked to the County Attorney's Office, I realize the Court cannot order this, but they have indicated to me that they will be moving from this jurisdiction, probably in the next 90 to 120 days. And we'd agree to that as one of the conditions.

"THE COURT: I presume you're going to recommend transfer of the supervision.

"MR. GILLETT: Yes, that's fine.

"THE COURT: I presume there's going to be a requirement for reimbursement to the Indigent Defense Services.

"MR. GILLETT: Yes.

"MR. CLARK: Also, for purposes of the record, Judge, I'm sure that the County Attorney will join me, we'll waive any PSI report.

"THE COURT: You want to go to sentence today?

"MR. GILLETT: Yes. We'll waive the PSI, Your Honor. I think Mr. Morris is aware that if there is any deviation from the terms of the probation whatsoever, what he's looking at. "

On December 13, 1990, the defendant entered a plea of guilty to the charge of rape. Prior to accepting the defendant's plea and after swearing in the defendant, the court asked the following questions:

"THE COURT: All right, you have heard everything that Mr. Clark and Mr. Gillett have been talking about, as far as how to dispose of this case?

"A [Defendant]: Yes, Your Honor.

"THE COURT: Are all the things that you have heard what you understand to be the agreement between you and the State, as far as how to dispose of the case?

"A: Yes, Your Honor.

"THE COURT: Have there been any suggestions or requirements or offers or comments, other than what has been stated in open Court here today?

"A: No, Your Honor.

"THE COURT: In your previous case, as I recall, that was a plea agreement, too, was it not?

"MR. CLARK: Yes, it was, Your Honor.

. . . .

"THE COURT: I'm still required to make a new record to make sure you understand what your rights are, and that you make a voluntary waiver of those rights. First of all, you have been through a couple of attorneys in this case. Originally, I think, David Rogers, and now Mr. Clark. Are you satisfied at this point with the legal representation you have had?

"A: Yes, sir.

"THE COURT: And have you had all the time you need to discuss your case with Mr. Clark?

"A: Yes, Your Honor.

"THE COURT: And you're satisfied you're ready to proceed today?

"A: Yes, sir.

"THE COURT: For the record, in this case, although you have told me before, that was in another case and another record; but in this case I want you to state briefly your background insofar as education, work history, and marital history, and that type of thing. Just give me a brief background.

"A: Well, I completed the eighth grade and about half of the ninth grade, and I went into the service and spent four years and nine months in the service and got out. I've been married four times. The woman I'm married to now is my fourth wife.

. . . .

"THE COURT: All right, you've been married several years.

"A: About eight years.

"THE COURT: Did you ever get your GED?

"A: Yes, sir, I got it at the V.A. Hospital in Topeka. .

"THE COURT: Are you satisfied you understand all of the ins and outs of what we're doing here today?

"A: Yes, sir.

"THE COURT: Is there any part if it that is confusing to you?

"A: No, sir.

"THE COURT: Have you had any mental or emotional problems, or treatment or counseling that would tend to indicate a problem in your understanding what we're doing here today?

"A: No, sir.

"THE COURT: You have been in jail quite sometime?

"A: Yes, sir. Eight months.

"THE COURT: Eight months. And you're not entering your plea today just as a means of getting out of jail? . . .

"A: I'm admitting that I did it the way the County Attorney entered it.

. . . .

"THE COURT: And you are admitting your guilt because that is what you want to do?

"A: Yes, sir.

"THE COURT: I'm going to find for the record that Mr. Morris is capable of waiving his legal and constitutional rights and entering a plea of guilty to the crime charged.

"Now, In regard to those rights, I'm sure you have visited with Mr. Clark about those rights?

"A: Yes, sir.

"THE COURT: It's the same thing we went over in the other case a year ago. It concludes the right to the presumption of innocence, as you sit there today; a right to require that the State convince a jury of twelve beyond a reasonable doubt that you are guilty before you can be found guilty; and do you understand you are waiving both of those rights?

"A: Yes, sir.

"THE COURT: You understand that when you waive those rights, that if at some point down the road you are dissatisfied with the disposition,

you would not be able to come back and appeal it on the basis you were deprived of those rights?

"A: Yes, sir.

"THE COURT: By the same token, you're entitled, along with the assistance of Mr. Clark, to question prospective jurors that would hear your case; you're entitled to his help in confronting and cross-examining the witnesses that would testify against you; and in addition to that, you're entitled to take the witness stand and testify in your own behalf, or you can choose not to testify, and no comment can be made to the jury about whether or not you testified. Do you understand those are also legal rights, but once you have waived those, you can't later come back and appeal on the basis that you were deprived of those rights?

"A: Yes sir, I understand.

"THE COURT: Finally, you would normally be entitled to appeal your conviction for whatever reason. When you enter a plea of guilty, and waive your rights, you understand that you are no longer entitled to an appeal of your conviction?

"A: Yes, sir.

"THE COURT: All right, and it is your desire to waive those rights?

"A: Yes, sir.

"THE COURT: I'll find that you have made a valid and knowing and intelligent waiver of your rights. Having made that finding, I'll ask you at this time how do you plead to Count 1 of the Information which charges a Class B felony, rape?

"A: Guilty, Your Honor.

"THE COURT: I'll accept that and enter judgment of guilt accordingly. Normally, at this point, we would order a presentence investigation. We did that in the other case, and that hasn't been that long ago, and I think I'm still familiar with all that background. Your attorney and Mr. Gillett have indicated that they are willing not to require another presentence investigation. Is it your desire to proceed to sentencing today, without the Court Services Officer going back and preparing a presentence report for my use?

"A: Yes, sir.

"THE COURT: Do you have anything further to state, legal or otherwise, why sentence could not be pronounced?

"A: No, sir.

"THE COURT: It's going to be the judgment and sentence of the Court, in line with the plea agreement, that you receive a sentence in this case of not less than 15 years nor more than life to the Secretary of Corrections. It will be further ordered that that sentence run consecutive to the sentence in the case that you're currently on probation in, 89 CR-31. You will further be ordered to pay the cost of this action. Again, in line with the recommendation of the State, and the plea agreement, I'm going to place you on probation for a period of ten years from that sentence. That probation also

is to run consecutive to the probation in the other case that you're currently serving. Do you understand that?

"A: I don't understand consecutive and the current. I mean is consecutive separate or running them together?

. . . .

"THE COURT: As specific conditions of probation, other than the ten year term, you'll be ordered to pay a probation supervision fee, Court costs, and reimburse the taxpayers of Kansas for the cost of both Mr. Rogers' and Mr. Clark's services. The probation officer will work with you in regard to your income, and set up a payment schedule that you'll be able to meet. But you will be required to continue making payments until all those things are paid for. In addition, you are specifically going to be required to attend some sort of a sexual counseling program to be set up or coordinated by the Court Services Officer with one of the mental health facilities. That can be done either locally or, if you move to another jurisdiction, with whatever mental health facilities are available in that district. If, after your initial screening, it's determined by those people that that counseling needs to be inpatient, then you'll be required to serve that portion of it as an inpatient. Do you understand?

"A. Yes, sir.

"THE COURT: If they determine it's not necessary, and can be done on an outpatient basis, that's fine, too. What you need to understand is that is a requirement that you're going to have to satisfy. The reason that requirement is being included is partly because of the plea agreement, and the other part is this is essentially your second offense. And, chances are, you're not going to have another opportunity to serve probation if you get yourself in a jam again. And it's a problem that you need to address as soon as you can. As far as the additional conditions, I will permit a transfer, supervision of this probation to another jurisdiction if, in fact, you move to another jurisdiction and contingent upon that jurisdiction accepting supervision. In other words, they aren't require to agree to take the supervision.

"A: Who do I go through to get—

"THE COURT: Your CSO, the Court Services Officer that is assigned to your case. Everything you do, you do through him. Don't do anything without checking with him first.

"A: (Nodded Head affirmatively)

"THE COURT: And he'll set all that up for you.

"A: (Nodded head affirmatively)

"THE COURT: You'll have some additional requirements similar to what you're already involved with in your other probation. Reporting to him, and all of what we refer to as the standard conditions of probation. Those will all be set out in writing to be typed up. You'll be required to read and initial and sign an acceptance of all those conditions. And, once you've done that, then they have the same force and effect as if I had set them out here orally in Court. Do you understand that?

"A: (Nodded head affirmatively)

"THE COURT: You need to also understand that violation of any of those will result in a motion being filed to revoke your probation. And if in fact your probation is revoked, then you're looking at serving your original sentence, plus a minimum of 15 years on this sentence. Do you understand that?

"A: Yes, sir.

"THE COURT: Do you have any questions at all?

"A: No, sir.

"THE COURT: Do counsel have anything further?

"MR. CLARK: One question he asked me, for the record, and I'd like to explain it to him. He was concerned about having to pay the costs and all that end of it. I explained to him that, of course, since he's on probation and will be for roughly 12 to 15 years, they'll set out a monthly payment plan over that period of time, so he should have more than enough time to get all his costs taken care of.

"THE COURT: Yes, you'll be expected to be employed and, once you're drawing income, they'll set up a payment schedule that will let you get all of it paid before you're off probation. You know, they're not going to take all your check because then you wouldn't be able to get by and you'd probably get in trouble.

"A: That's how I got behind on my last payments. Twenty-five dollars a week was hard to pay. Paid twenty dollars a month—

"THE COURT: Depending.on what kind of job you have, and how much you're earning, they'll try to make it in such amount that you should be able to pay it. But whatever amount they set, you're going to have to do it. Do you understand that?

"A: Yes, sir.

In May 1991, upon motion with notice to the defendant and after hearing, the court revoked the defendant's probation because the defendant did not comply with the conditions of his probation. The evidence established that the defendant had missed several appointments with his therapist and that he had assaulted another woman. Upon revocation, his original sentence of 15 years to life was reinstated. In August 1991, the defendant's sentence was modified to a sentence of not less than 10 years nor more than life.

In February 1992, over two years after his plea of guilty to rape, the defendant moved to withdraw his plea. It is from the court's denial of this motion that the defendant appeals.

Before we begin our discussion of the specific contentions of the defendant, we think it is important to note that the plea entered by the defendant was the result of a plea agreement. From the record it appears that the agreement was beneficial to

the defendant in that the State agreed to withdraw its motion for revocation of probation for the defendant's earlier offense, agreed to dismiss four of the five charges pending against the defendant, agreed to a suspended sentence of 15 years to life on the rape charge, and agreed to probation for the defendant upon the rape charge subject to reasonable conditions and costs assessed to the defendant.

It was only after his probation on the suspended sentence was revoked that the defendant moved to withdraw his plea to the rape charge. He claims that he did not understand the plea and the trial judge did not inform him of the information required by statute before he entered his plea. While we examine his allegations, we do not ignore the lapse of time and context in which his claim is raised. See *State v. Underwood*, 228 Kan. 294, 300, 615 P.2d 153 (1980).

The defendant claims on appeal that the trial court erred in denying his motion to withdraw his guilty plea because (1) when the plea was accepted the court did not adequately inform him of the consequences of his plea and of the maximum penalty provided by law that could be imposed as a result of his plea and (2) the court did not adequately determine whether the plea was entered with an understanding of the nature of the charge and the consequences of the plea. The State contends that the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.

K.S.A. 22-3210 sets forth the requirements with which a court must comply when accepting a plea of guilty or nolo contendere and the circumstances under which a plea may be withdrawn. It provides in pertinent part:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

(1) The defendant or counsel for defendant enters such plea in open court; and

(2) in felony cases the court has informed the defendant of the consequences of the plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

(4) the court is satisfied that there is a factual basis for the plea.

(b) In felony cases the defendant must appear and plead personally and a verbatim record of all proceedings at the plea and entry of judgment thereon shall be made.

. . . .

(d) A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

K.S.A. 22-3210 "embodies the due process requirements as interpreted by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S.Ct. 1709 (1969); [Citations omitted.] *Boykin* added the due process requirement that the record must affirmatively disclose a knowing and voluntary plea. [Citation omitted]." *Noble v. State*, 240 Kan. 162, 163, 727 P.2d 473 (1986).

Thus, before sentencing, the trial court has discretion to allow a defendant to withdraw a plea at any time. After sentence has been imposed, the trial court in its discretion may allow a defendant to withdraw his guilty plea to "correct manifest injustice." We have held that "[a] plea of guilty or nolo contendere may be withdrawn *after sentence* as provided in K.S.A. 22-3210(7) only for good cause shown when in the discretion of the trial court it becomes necessary to correct manifest injustice." *State v. Underwood*, 228 Kan. 294, Syl. ¶ 2. Accord *Trotter v. State*, 218 Kan. 266, 269, 543 P.2d 1023 (1975). Our standard of review is whether the trial court abused that discretion in denying the defendant's motion to withdraw his guilty plea.

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. All judicial discretion must thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds." *State v. Martin*, 237 Kan. 285, Syl. ¶ 2, 699 P.2d 486 (1985).

Defendant contends that the trial court abused its discretion in denying his motion to withdraw his guilty plea because at the time the plea was accepted the trial court did not comply with the requirements of K.S.A. 22-3210.

We have held that a trial court's failure to strictly comply with the requirements of K.S.A. 22-3210 may be reversible error unless the record, viewed in its entirety, discloses that the plea was "accepted by the trial judge in compliance with the statute." *Noble*, 240 Kan. 162, Syl. ¶ 1. The issue before us, therefore, is whether the trial court abused its discretion in determining that the record of the plea proceedings disclosed that the trial court accepted the plea in compliance with the statute.

With respect to the defendant's first contention, we believe that the record discloses that the defendant was informed of the maximum penalty that could be imposed upon acceptance of his plea. The defendant was present with counsel at his plea hearing; at that hearing the prosecutor stated for the record that the maximum sentence would be 15 years to life. See K.S.A. 21-4501(b). The prosecutor later stated that he thought "Mr. Morris [was] aware that if there is any deviation from the terms of probation whatsoever, what he's looking at." After these statements by the prosecuting attorney, the following colloquy took place between the court and defendant:

"THE COURT: [Y]ou have heard everything that Mr. Clark and Mr. Gillette have been talking about, as far as how to dispose of this case?

"A: "Yes, your honor.

"THE COURT: Are all the things that you have heard what you understand to be the agreement between you and the state, as far as how to dispose of the case?

"A: "Yes, your honor."

Moreover, in August 1991, the trial court heard the defendant's motion to modify his sentence. At that time the prosecutor said: "The 15 years to life . . . was a plea negotiated sentence . . ., and it was one of the things that he was willing to do, and was understanding and fully aware of that sentence as part of the plea negotiations." The trial court reduced the defendant's sentence to 10 years to life. Finally, at the hearing on the defendant's motion to withdraw his plea, his trial counsel testified that the defendant was aware of the maximum penalty:

"Q: Is it your understanding that he was aware of the maximum penalty under the law for the charge of rape?

"A: I don't think there's much question about that. We talked about a life situation."

In *Trotter*, the record demonstrated that defense counsel had informed the defendant of the possible penalty and consequences of his plea. We concluded that counsel's advice together with the court's advice established that the defendant knowingly and intelligently entered his plea. 218 Kan. at 269-70. Although Morris testified at the hearing to withdraw his plea that he did not know what the maximum penalty was at the time he pled guilty, there is evidence in the record to support the trial court's finding that the defendant was informed of the maximum penalty.

The defendant next contends that the trial court should have allowed him to withdraw his guilty plea because the court did not adequately determine whether his plea was entered knowingly and voluntarily. He argues that the court never discussed the elements of the offense with him.

At the plea hearing, the elements of the offense were not discussed in detail. The prosecutor explained that "it was not necessarily a thing that one would normally think of when thinking of the crime of rape, in that there was not the placing of the male sex organ into the female sex organ. We're talking about fingers, and so it's a little different type of situation that what one would normally think of." The following dialogue later occurred between the court and the defendant:

"THE COURT: . . . Are you admitting your guilt to the charge because you admit doing it, or just as a means of getting out of jail?

"A: I'm admitting that I did it the way the County Attorney entered it.

"THE COURT: The way he described it a while ago?

"A: Yes, you know, not actually doing it, you know, putting my penis in and everything else, but, you know, doing it with my hand, like he said.

"THE COURT: All right. And you understand, though, that even though that is what he described, that it would still constitute a violation of the statute?

"A: Yes, sir.

"THE COURT: And you are admitting your guilt because that is what you want to do?

"A: Yes, sir."

The court thereafter found that the plea was knowingly and voluntarily made.

Over two years later, the defendant filed his motion to withdraw his plea. At the hearing on that motion, the defendant's wife testified that he was "kind of incoherent" just before the

plea hearing and that he spent most of his time sleeping for the first three days after the hearing. Morris testified at the hearing on his motion to withdraw his plea that he had taken an "overdose" of medication the night before the plea hearing. He added that he barely remembered the plea hearing and was not mentally capable of entering a plea at that time. He also testified that he had attempted suicide several times over the last 15 years and that he had received inpatient treatment for emotional problems several times over the past 25 years. Given this evidence, the defendant now argues that the trial court should have made a more detailed inquiry before concluding that the plea was knowingly and voluntarily made.

The State contends that the following facts support the trial court's conclusion that the plea was knowingly and voluntarily made. First, an evidentiary preliminary hearing was held and the defendant was bound over on all charges in the complaint. He thus was aware of the factual allegations on which the charges were based. Second, the defendant thereafter entered a plea agreement. Third, at the plea hearing, the court discussed with the defendant the rights he was waiving by pleading guilty. The defendant said that he understood what rights he was waiving and that he wanted to waive those rights. Fourth, contrary to the defendant's claim that he was sluggish and incoherent at the time of the plea hearing, a fair reading of the transcript indicates he was aware of and understood what was taking place. The court asked the defendant if he heard and understood what the two attorneys had been discussing, and the defendant indicated that he did. The court specifically asked the defendant if he had any mental or emotional problems that would "tend to indicate a problem in your understanding of what we're doing here today"; the defendant said, "No, sir." The defendant discussed with the court the manner in which the crime was committed. After sentence was imposed, the defendant specifically asked the court about the meaning of concurrent and consecutive sentences. Fifth, at the hearing on the motion to withdraw his plea, the defendant's trial counsel testified that he did not notice "anything seriously wrong" with the defendant on the day he pled guilty and that the defendant did not appear to be "zombie-like" or

"sluggish." We agree with the State and find the above contentions persuasive.

Finally, the Topeka Correctional Facility report indicated that the defendant's "thinking is well organized, coherent, and logical." We also note that the defendant was found competent to stand trial after a competency evaluation. Although a competency determination is not dispositive of whether a plea was knowingly and voluntarily made, in this case it does provide evidence that tends to contradict the defendant's contention that he was somehow mentally or emotionally disturbed to the point that he could not understand the plea proceedings.

We hold that the record, when viewed as a whole, demonstrates that the defendant was adequately advised of the maximum penalty and that he knowingly and voluntarily entered his plea of guilty.

Affirmed.