(87 P.3d 369)
No. 89,726

STATE OF KANSAS, *Appellee*, v. JOSEPH MCCRAY, *Appellant*.

Opinion filed April 9, 2004.

*Theresa L. Barr*, assistant appellate defender, for appellant.

*Robert D. Hecht*, district attorney, *Deborah L. Hughes*, assistant district attorney, *Jamie Karasek*, legal intern, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE, J., and ROGG, S.J.

GREENE, J.: Joseph McCray appeals the district court's denial of his motion to withdraw his *Alford* plea prior to sentencing. See *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). McCray contends (i) that the plea was coerced in part due to the participation of another district court judge and (ii) that his due process rights were violated when the court accepted a written factual basis for the plea absent inquiry of McCray. We affirm.

*Factual and Procedural Overview*

McCray was charged with 14 counts of numerous serious crimes, including aggravated kidnapping, rape, aggravated burglary, criminal threat, aggravated battery, aggravated robbery, and aggravated assault. Since McCray was mildly retarded, his competency to stand trial was determined prior to plea negotiations. Ultimately, the State offered to dismiss most of the pending charges if he would enter an *Alford* plea to two counts of aggravated kidnapping and two counts of aggravated robbery. On the date set for entry of his plea, McCray stated that he did not want to enter a plea, whereupon his attorneys requested that a district court judge meet with McCray to discuss the proposed plea agreement. The judge agreed to such a meeting with the understanding that he would not have further judicial involvement in the proceedings.

According to the judge, who testified at the plea withdrawal hearing, the meeting lasted about 15-20 minutes. The judge stated that McCray was tracking very well and answered his questions intelligently. It was the judge's opinion that McCray had absolutely no difficulty in understanding what he was talking about and that McCray did not appear to be emotionally distraught. The judge told McCray that if he took the plea, he would be a relatively young man when he got out of prison compared with the age he would be if he did not take the plea and was convicted. The judge stated that he did not pass on the merits of the case against McCray or discuss whether McCray would likely be convicted. According to the judge, the State was willing to substantially reduce its charges,

and the judge was concerned that McCray might miss the opportunity to take advantage of the deal.

At the end of the meeting, McCray told the judge that he was not going to take the plea, as indicated by the judge's testimony at the plea withdrawal hearing:

"Q.   [Defense counsel:] When [the meeting] concluded, did Mr. McCray tell you that he was going to take that plea offer?

"A.   [Judge:] Absolutely not. He said: 'No, I'm not going to accept that. I'm going to leave my trust in the Lord.' "

After his meeting with the judge, McCray met with his attorneys, who later testified that they did not compel McCray to accept the plea. In any event, at some time after the meeting with his attorneys, McCray elected to proceed with the *Alford* plea agreement. He signed a seven-page detailed "Petition to Enter an Alford Plea and Advice of Rights in Regard Thereto" and a five-page "Agreed Statement of Expected Testimony as Factual Basis for Defendant's Alford Plea." The petition attached a certificate from his counsel that contained counsel's opinion that the plea was "freely, voluntarily and understandingly made" and that acceptance of the plea was recommended "as in the Defendant's best interest."

At the plea hearing, the district court (not the same judge) accepted McCray's petition to enter the *Alford* plea, as well as the written stipulated facts supporting the factual basis for the plea. McCray's counsel specifically agreed that the written stipulated facts summarized the evidence the State believed it could produce at trial. McCray himself told the court that his statements were free and voluntary. The court accepted McCray's pleas as freely made pursuant to *Alford*.

Just 10 days after his plea, McCray filed a pro se motion to vacate his plea agreement. The district court denied McCray's motion, ruling from the bench that McCray was able to understand the consequences of his plea. Further, the court noted there was no evidence that McCray was pressured or manipulated into making the plea.

Following the denial of the motion to withdraw plea, the court proceeded with sentencing. McCray appeals.

*Standard of Review*

In determining whether good cause has been shown to permit withdrawal of a plea under K.S.A. 2003 Supp. 22-3210(d), the district court must consider the following factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Bey*, 270 Kan. 544, 545, 17 P.3d 322 (2001). On appeal of a motion to withdraw plea, we review the district court's decision under an abuse of discretion standard. See K.S.A. 2003 Supp. 22-3210(d); *State v. Morris*, 254 Kan. 993, 1001, 869 P.2d 739 (1994). Discretion is abused only when no reasonable person would take the view adopted by the district court. The defendant bears the burden of establishing such an abuse of discretion. *Bey*, 270 Kan. at 545-46.

*Did the District Judge's Participation Coerce the Plea or Violate McCray's Due Process Rights?*

McCray argues that the judge's discussion with him, coupled with his mental status, coerced him to plea. He suggests that the judge's participation was itself a violation of his due process rights, citing three federal cases, *Miles v. Dorsey*, 61 F.3d 1459, 1466 (10th Cir. 1995), *United States v. Miles*, 10 F.3d 1135 (5th Cir. 1993), and *United States v. Skidmore*, 998 F.2d 372 (6th Cir. 1993). Two of these cases (*Skidmore* and *United States v. Miles*), however, are based exclusively upon Fed. R. Crim. Proc. 11(e), which forbids federal judges from participating in plea negotiations. In federal courts, the prohibition is intended to diminish the possibility of judicial coercion of guilty pleas, to avoid impairment of the court's impartiality, and to preclude a misleading impression of the court's role in the proceeding. *Miles*, 10 F.3d at 1139. The federal rule offers little guidance in determining when a guilty plea entered in state court must be set aside. *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980), *modified* 646 F.2d 902 (5th Cir.), *cert. denied* 454 U.S. 840 (1981). Although we acknowledge that the purposes of the federal rule are meritorious, we have no such rule in Kansas and these two cases are not directly applicable here; nor do they

establish that a violation of the rule, standing alone, has constitutional implications, even in federal courts.

The constitutional implications of judicial involvement in plea negotiations is discussed in *Dorsey*, which reviewed a state proceeding under the federal habeas corpus statute, 28 U.S.C. § 2254 (2000). The court found that "moderate" participation of state court judges in plea negotiations does not offend the Constitution and that a judge's participation in plea negotiations and discussions violates due process of the defendant *only* where the participation causes the defendant not to understand the nature of the charges against him or the consequences of the guilty plea, or otherwise coerces the defendant to enter into a plea bargain involuntarily. 61 F.3d at 1467.

With these principles in mind, we conclude that the judge's involvement in meeting with McCray did not violate his due process rights. *First*, the judge did not volunteer to get involved but rather was requested by McCray's attorneys to assist them in this manner—undoubtedly, counsel felt that the judge would provide impartial and constructive input to this mildly retarded defendant. *Second*, the judge correctly indicated that his participation would require that he have no further judicial involvement in the matter—this caveat was consistent with the policy underlying the federal rule. *Third*, the judge's involvement was moderate in that he did not opine on the merits of the case or comment on the possibility of conviction. *Fourth*, there is absolutely no allegation that the judge's participation caused McCray to misunderstand the nature of the charges or the consequences of his plea. *Fifth*, and perhaps of most significance, the judge apparently had no determinative influence over McCray's decision, given McCray's clear refusal to enter the plea at the close of the judge's meeting. *Finally*, it appears to this court that the documents presented to and signed by McCray, including the "Petition" and the "Agreed Statement" reflect that all parties and counsel 'went the extra mile' to assure that McCray accepted the agreement freely, voluntarily, and understandingly. For all of these reasons, we find no constitutional infirmity in the judge's participation.

We have been cautious to avoid criticism of the judge involved in McCray's plea agreement discussions, since we are convinced that he was motivated by compassion for McCray's mental condition and that he intended to be helpful to the process. Nevertheless, this case demonstrates the wisdom of the federal rule: the better practice is for a judge to avoid any involvement or participation of any kind in plea negotiations and discussions, even if the judge intends to recuse himself or herself from further judicial duties in the matter.

We conclude that the district court did not abuse its discretion in refusing to allow McCray to withdraw his plea based upon another judge's participation in plea discussions.

*Was the District Court Required to Discuss or Make Inquiry of the Defendant Regarding the Written Factual Basis for the Plea?*

McCray next complains that his due process rights were violated by the court's acceptance of the plea based on a written fact statement and without discussing these facts with McCray or making inquiry of him on the record regarding the factual statement. McCray cites no Kansas authority to support this argument and relies solely on *Alford*, 400 U.S. at 37-38.

The *Alford* case does not support McCray's argument; the Court held that there is no due process violation where a plea of guilty is joined with a protestation of innocence, so long as there is some factual basis for the plea. 400 U.S. at 37-39. Here, McCray submitted a detailed "Agreed Statement" for the purpose of supporting his plea, and that written factual statement was far more detailed than required to satisfy due process requirements. See *State v. Shaw*, 259 Kan. 3, 10-11, 910 P.2d 809 (1996). It seems particularly counterproductive to require discussion with the defendant regarding the factual basis to support an *Alford* plea; the very nature of such a plea makes it unlikely that the defendant would agree with or accept the factual basis since it would presumably undermine his purported innocence.

We conclude that the district court did not abuse its discretion in refusing to allow McCray to withdraw his plea based upon the

court's failure to discuss the detailed factual statement on the record with McCray.

In conclusion, we note McCray's suggestion that mental retardation presents special problems in plea bargaining, citing Ellis and Luckasson, *Mentally Retarded Criminal Defendants*, 53 Geo. Wash. L. Rev. 414, 460-66, March/May 1985. These authors acknowledge, however, that "the operation of the criminal justice system depends on a predictable quantity of plea bargaining, and for many defendants, a plea bargain appears to be their only substantial hope of reducing their sentence." 53 Geo. Wash. L. Rev. at 460. Indeed, mentally challenged criminal defendants must be cautious to avoid over-zealous challenges to plea agreements, since the result could have a chilling effect on a beneficial practice. Although plea agreements involving mentally challenged defendants may deserve special scrutiny, the parties here appear to have been particularly sensitive to the defendant's limitations, consistent with the requirements of due process.

Affirmed.