NOT DESIGNATED FOR PUBLICATION

No. 114,902

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AL'RYON JAQUOIN PERKINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed February 10, 2017.
Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Kendall Kaut*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., POWELL, J., and HEBERT, S.J.

*Per Curiam*:  After pleading guilty to a series of crimes, Al'Ryon Jaquoin Perkins filed a presentence motion to withdraw his guilty plea. Following a hearing, the district court found that Perkins failed to show good cause and denied the motion. On appeal, Perkins challenges the district court's denial of his motion and his sentence. After reviewing the record, we find no error by the district court and affirm.

1

On September 10, 2014, Perkins pleaded guilty to rape, aggravated kidnapping, aggravated indecent liberties with a child, two counts of aggravated burglary, and misdemeanor theft. According to the plea's factual basis, in the early morning of November 9, 2010, Perkins, who was under the age of 18 at the time, broke into a Topeka home by climbing through a back window. His plan was to steal marijuana but, instead, he took a lockbox of coins. After returning outside and setting the box on the sidewalk, Perkins went back into the home. He came across a 5-year-old girl, whom he led outside and raped. He gave both an oral and written confession to police, and his DNA was found in the semen on the girl's underwear and pants.

At the plea hearing, the district court reviewed Perkins' rights as a criminal defendant. Perkins said he understood his rights. When the district court asked him if he had any questions, Perkins said, "Judge, I understand what you've told me. I do." The district court then explained to Perkins that by pleading guilty he was waiving his rights. Perkins said he understood but then mentioned that he had a question. The district court allowed Perkins to speak with his attorney, who informed the district court that the question was not directly relevant. The district court then went over durational and dispositional departures. Perkins said he understood.

After Perkins denied being forced or threatened to plead guilty, the district court asked him if he had enough time to speak with his attorney. Perkins said, "Yes, sir, I want to think so." This answer prompted the district court to ask the question again and told Perkins it was fine if the answer was no. Perkins replied, "Yes, sir." The district court also reminded Perkins that he was the one making the decisions and that it wanted to make sure he understood and agreed with what was going on. Perkins said he was doing the best he could but making decisions was starting to get harder. The district court said that was why it wanted to make sure he had enough time to speak with his attorney and

asked if it should be worried about anything. Perkins said, "I think that might be addressed for a minute?" His attorney then interjected that he thought Perkins was hesitating because they had more preparation to do for sentencing. The district court said it would go into some of that later and asked Perkins again if he had enough time to speak with his attorney. Perkins said, "Yes, sir."

The district court then asked Perkins if any issues with his mental health, his educational status, or substance abuse were affecting his ability to understand the proceeding, to talk with his attorney, and to make his own decisions. Perkins gave an unclear answer and then said he would say no. The district court clarified that nothing was interfering, and Perkins said no. After the State read the factual basis for the plea, the district court asked Perkins if he believed based on those facts a jury would find him guilty. Perkins again gave an unclear answer, so the district court rephrased the question and had Perkins speak with his attorney. After their discussion, Perkins agreed that a jury would find him guilty. He then pleaded guilty.

Over a month after he entered his guilty plea but before sentencing, Perkins filed a pro se motion to withdraw the plea. He alleged that his plea was not entered into voluntarily because he had been manipulated and threatened by his attorney and that he was not in a clear state of mind due to fear and hopelessness. The attorney appointed to represent Perkins reframed Perkins' claim at the motion hearing, arguing that Perkins did not have sufficient time, due to his mental health issues, to make an informed decision about pleading guilty. Perkins' struggle with mental health issues had been raised earlier in the case in the context of his competency to stand trial. Three different doctors conducted a total of five evaluations. Although it noted that Perkins suffered from various psychiatric issues and that his functioning level was relatively low, the district court concluded he was competent to stand trial.

3

At the motion hearing, Perkins testified that he entered his guilty plea and had been manipulated by plea counsel, whom he could not trust because plea counsel told him he was guilty. Perkins also testified he told plea counsel that he wanted to go to trial, but plea counsel threatened to withdraw. According to Perkins, he and plea counsel discussed a plea in detail on September 9, the night before the plea hearing. He told plea counsel that he needed more time to decide and that he was not ready to plead the next day. He also claimed that he did not understand his rights that the district court discussed with him at the plea hearing and just went along with the proceeding so that he could move on with his life. His mental health issues also played a role because they affected his ability to make decisions. If he had more than half a night to decide, he would have been able to make a better decision, even with his mental health issues.

Plea counsel testified they began discussing a guilty plea after a motion to suppress was denied and, by September 7, they agreed Perkins should plead guilty. Counsel testified that they discussed a guilty plea in detail on September 7, not September 9. Counsel also testified that he had represented clients who, due to mental health issues, were unable to understandingly enter a guilty plea and that he did not see any behaviors indicating that Perkins was unable to plead guilty. Perkins also never told him that he did not want to plead guilty or that he wanted a trial. Based on everything he had seen and heard, plea counsel believed Perkins had made a knowing and voluntary plea.

At the end of the hearing, the district court ruled from the bench, stating it was aware of Perkins' history of mental health issues and recognizing his argument that he did not have enough time to consider a guilty plea. Concluding that Perkins had not met his burden of establishing good cause, the district court denied the motion, specifically finding that Perkins had been represented by competent counsel; there was no evidence that Perkins had been coerced, threatened, or manipulated; and Perkins had entered his plea freely and voluntarily.

4

At sentencing, the district court determined that Perkins had a criminal history score of D based upon a juvenile adjudication, imposed the aggravated sentences in the appropriate sentencing guidelines grid boxes, and sentenced Perkins for a total of 527 months in prison.

Perkins timely appeals.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING PERKINS' MOTION TO WITHDRAW HIS GUILTY PLEA?

When reviewing a district court's ruling on a motion to withdraw a plea, we apply an abuse of discretion standard of review. *State v. Huynh*, 278 Kan. 99, 101, 92 P.3d 571 (2004). A district court's action is an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Perkins, as the party alleging abuse of discretion, bears the burden of proof. See *State v. Garcia*, 295 Kan. 53, 61, 283 P.3d 165 (2012). To the extent that interpretation of a statute is required, our review is unlimited. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

To withdraw a guilty plea before sentencing, a defendant must show good cause. K.S.A. 2015 Supp. 22-3210(d)(1). The factors a district court considers in determining whether the defendant has shown good cause are whether "'(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" [Citations omitted.] *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors should not be exclusively and mechanically applied. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

5

Perkins claims he should have been allowed to withdraw his guilty plea because he did not have sufficient time to make a decision about pleading guilty due to his mental health issues. Although he also made allegations in his motion and at the motion hearing suggesting he was represented by incompetent counsel who coerced or threatened him into pleading guilty, Perkins has waived and abandoned those issues by failing to brief them. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). On appeal, he argues only that the denial of his motion was an abuse of discretion because the district court relied exclusively on the *Edgar* factors, even though his claim did not fit neatly into a particular factor. He made similar allegations at the motion hearing before the district court. According to Perkins, the severity of his mental health issues, which required him to need extra time to weigh the significance of a guilty plea, was enough to establish good cause.

The record shows the district court was aware of and did consider Perkins' mental health issues. First, the judge who accepted Perkins' guilty plea was the same judge who ruled that Perkins was competent to stand trial. By ruling on his competency, the district court was inherently aware that Perkins suffered from mental health issues. Second, when ruling on Perkins' motion to withdraw his guilty plea, the district court stated it was aware of his history of mental health issues, it knew he had a number of evaluations throughout the case, and it had conducted a more detailed plea colloquy because of his situation. The district court also noted Perkins claimed that he did not have sufficient time to consider his guilty plea. Third, from the record it appears the district court concluded that Perkins' claim was relevant to whether his guilty plea was fairly and understandingly made, a conclusion rooted in law and logic. In *State v. Morris*, 254 Kan. 993, 1005, 869 P.2d 739 (1994), our Supreme Court stated that a competency determination can be evidence that could contradict a defendant's claim that his mental or emotional state prevented him or her from understanding the plea proceedings. Logically, because the heart of Perkins' claim is that his guilty plea was not understandingly made because he needed extra time to consider a plea's ramifications due to his mental health

6

issues, the district court's finding that Perkins' guilty plea was understandingly made implicitly concluded that he had enough time.

The record also supports the district court's implicit conclusion that even with his mental health issues, Perkins had enough time to decide whether to plead guilty. At the plea hearing, Perkins said he understood that he had the right to a jury trial, to be represented by an attorney at trial, to be presumed innocent, to testify on his behalf, and to subpoena witnesses. Perkins said he understood the State's burden of proof and that by pleading guilty he was waiving all the rights the district court had discussed. Perkins also said he understood sentencing and both durational and dispositional departures. Moreover, Perkins told the court that no one forced or threatened him to waive his rights and plead guilty. Also, after some discussion with the district court, Perkins said he had been given enough time to speak with his attorney and to make a decision about pleading guilty. Perkins told the court that neither his mental health issues, which the district court specifically mentioned, nor his educational status or substance abuse issues were interfering with his ability to understand the proceedings. Finally, after the district court clarified its question, Perkins admitted that if a jury heard the evidence summarized in the State's factual basis, it would find him guilty on all counts. Perkins then pleaded guilty.

Our review of this record suggests that after entering his guilty plea, the solemnness and significance of his decision struck Perkins, moving him to withdraw his plea. A change of heart, however, does not constitute good cause under K.S.A. 2015 Supp. 22-3210(d)(1). See *State v. Glover*, 50 Kan. App. 2d 991, 997-98, 336 P.3d 875 (2014), *rev. denied* 302 Kan. 1014 (2015); see also *State v. Schow*, 287 Kan. 529, 542, 197 P.3d 825 (2008) (defendant should not be able to withdraw guilty plea "simply because he or she determines, in hindsight, that it was not the most intelligent course of action"). Because its decision was based on the law, supported by facts in the record, and reasonable, the district court did not abuse its discretion. See *Ward*, 292 Kan. at 550.

Therefore, the district court did not err in denying Perkins' motion to withdraw his guilty plea.

## Did the District Court Err in Sentencing Perkins?

Finally, Perkins also claims that the district court's use of his previous juvenile adjudication to raise his criminal history score—thereby increasing his sentence—and its imposition of the aggravated number in the sentencing guidelines grid box—which he claims is beyond the statutory maximum for his convictions—without having his juvenile adjudication and the aggravating factors proven to a jury beyond a reasonable doubt violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Cunningham v. California*, 549 U.S. 270, 127 S. Ct 856, 166 L. Ed. 2d 856 (2007). Perkins acknowledges that our Supreme Court has held otherwise in *State v. Johnson*, 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008), and *State v. Hitt*, 273 Kan. 224, Syl. ¶ 2, 42 P.3d 732 (2002), *cert. denied* 537 U.S. 1104 (2003), but includes the issues to preserve them for federal review. While Perkins also argues that *Johnson* was wrongly decided, we must follow Kansas Supreme Court precedent unless there is some indication that the court is changing positions. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). As there is no such indication, the district court did not err in sentencing Perkins.

Affirmed.