NOT DESIGNATED FOR PUBLICATION

Nos. 123,883
123,884

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES SAMUELS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed September 9, 2022.
Affirmed.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: James Samuels is serving a 48-year prison sentence for the rape of a child under the age of 14. Four years after he was sentenced, Samuels moved to withdraw his no-contest plea and for habeas corpus relief, claiming ineffective assistance of counsel. He appeals the denial of those two motions. Our review of the record reveals that Samuels has presented no good reason to reverse the court's holding on either motion. We affirm.

1

*Charged with three counts of rape, Samuels is appointed defense counsel.*

In late 2010, Samuels was charged with three counts of rape of a nine-year-old girl. Samuels, who has an IQ of 67, has difficulties reading, writing, and in filling out forms. The district court appointed Michael Grimmett to represent Samuels in this prosecution. Grimmett twice asked the court to order Samuels to undergo competency evaluations, which were granted. The first evaluation was at the outset of the case, and the second evaluation was just before Samuels entered a plea of no contest. Samuels was found to be competent to stand trial following both evaluations.

About a year later, in December 2011, Samuels, who was 18 at the time of the charges, pleaded no contest to one count of rape of a child under the age of 14. The State agreed that it would "stand mute" when Samuels asked for a durational departure from the presumptive hard 25 life sentence, and it requested Samuels be sentenced according to the sentencing guideline grid.

After entering his plea, the parties realized that several sentencing statutes applied because of Samuels' prior sex crimes. The district court asked if Samuels wanted to withdraw his plea because the sentence would be significantly longer than what the parties contemplated. Samuels did not withdraw his plea. In June 2012 the court sentenced Samuels to 586 months in prison and lifetime supervision. About a week later, a written waiver of appeal was signed and filed in district court by Samuels and Grimmett. Samuels did not appeal his conviction.

In February 2015 Samuels filed a pro se "Motion to Withdraw Plea bargain with Specific Cause: Incompetent Counsel." The district court treated the motion as both a motion to withdraw plea and K.S.A. 60-1507 motion and appointed counsel. After a hearing the district court denied Samuels' motion. Samuels appealed the denial of his motion, arguing that his K.S.A. 60-1507 counsel was ineffective. A panel of this court

2

agreed and reversed the denial of his motions and remanded the case to the district court. *State v. Samuels*, No. 116,758, 2017 WL 5184425, at *3 (Kan. App. 2017) (unpublished opinion).

*Upon remand, the district court took testimony on the two motions.*

Upon the return of the cases to the district court, it appointed Samuels new counsel to handle his motions. This time Samuels' counsel clarified that his argument was that his trial counsel was deficient in five ways:

(1) his inexperience with this type of case;

(2) failure to investigate and file any pretrial motions;

(3) failure to recognize or deal with Samuels' mental deficiencies;

(4) failure to discover and address Samuels' criminal history; and

(5) failure to challenge Samuels' statement to law enforcement while he had alcohol in his system at the time of his arrest.

Grimmett testified that before Samuels' case, he had not handled a "Jessica's Law" case but had multiple indecent liberties with a child cases. As for Samuels' mental deficiency, Grimmett testified that he had two competency evaluations done on Samuels. He tried to get a forensic psychologist to examine Samuels but failed. Grimmett spoke with many members of the defense bar for suggestions on how to handle Samuels' case.

As for Samuels' plea agreement, Grimmett testified he explained it as thoroughly as possible several times to Samuels. He tried to make sure Samuels understood each aspect and the possible options and consequences. He testified that when he reviewed documents with Samuels, he would set the documents between them and go through them line-by-line, explaining what they meant and asking if he had questions.

At the time of the plea bargain, Grimmett only knew Samuels had one prior conviction. Another prior conviction was uncovered in the presentence investigation report. Grimmett testified that because Samuels' second prior conviction implicated different sentencing statutes, sentencing became so complex that the court offered to allow Samuels to withdraw his plea. Samuels chose to continue with making a no-contest plea.

Grimmett testified that he did not know why he did not move to suppress Samuels' confession even though Samuels had a blood alcohol concentration of .069 when he was interrogated. He agreed it could be an important issue if someone is intoxicated when they give a confession.

For his part, Samuels testified that he cannot read without help, was in special education in school, and misspelled his name on one of the motions he filed with the court. He testified that he felt like he was wronged by the situation and was only able to file his motions because his friends in prison helped him.

*In a thorough and carefully drawn order, the district court denied Samuels relief on both motions.*

Basically, the court rejected Samuels' argument that Grimmett was ineffective for failing to challenge the admissibility of his statement to police. Samuels was questioned about his alleged crimes when he was arrested for public intoxication. His BAC was .069.

The district court denied Samuels' argument, noting that he testified he remembered what he told the detective during the interview, there was no sign that his statement was involuntary, and his case was resolved through a no-contest plea; thus, there was no basis to find he was deprived of ineffective assistance or a fair proceeding.

The district court also denied Samuels' motion to withdraw plea. The district court found that

- Grimmett's representation of Samuels was competent and effective;
- nothing showed he was misled, coerced, mistreated, or unfairly taken advantage of; and
- the court took ample time and measures to ensure the proceedings were thoroughly explained to Samuels.

The court noted that it offered Samuels the opportunity to withdraw his plea before sentencing, and Grimmett discussed plea withdrawal with Samuels, but he elected not to withdraw his plea.

Samuels appeals, arguing that the district court erred by denying both motions. On appeal Samuels only argues that his trial counsel was ineffective for failing to challenge the admissibility of his confession.

*We find no abuse of discretion in denying Samuels' motion to withdraw his plea.*

Only one statute—K.S.A. 2021 Supp. 22-3210(d)(2)—permits a court to set aside a conviction and permit a defendant to withdraw a no-contest plea. That is permitted in order to prevent manifest injustice. We review a district court's decision to deny a motion to withdraw a no-contest plea for an abuse of discretion. *State v. Cott*, 311 Kan. 498, 499, 464 P.3d 323 (2020). A judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). The movant bears the burden to prove the district court erred in denying the motion. *State v. Fox*, 310 Kan. 939, 943, 453 P.3d 329 (2019).

When courts consider such questions, caselaw teaches us that we must look at three factors originally established in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006):

>      (1) whether the defendant was represented by competent counsel;

>      (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and

>      (3) whether the plea was fairly and understandingly made.

*State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

We will consider the factors based on the facts here.

*Competent Counsel*

Samuels has not shown us that he was represented by incompetent counsel. He notes that this was Grimmett's first "Jessica's Law" case but he does not show how Grimmett mishandled the case. Grimmett was not inexperienced. He had represented defendants in Butler County for seven to eight years and several of his clients had been charged with indecent liberties with a child. And Samuels' sentence was not enhanced under "Jessica's Law"—his sentence was a grid sentence.

Samuels says that Grimmett failed to pursue pretrial remedies but does not suggest what pretrial remedies he should have pursued. Grimmett negotiated what seemed like a good plea deal for Samuels before his true criminal history was uncovered.

Finally, Samuels argues that Grimmett failed to properly investigate his criminal history. When Samuels entered his plea, both parties believed that he had one prior conviction for indecent liberties with a child. The PSI report uncovered another conviction for indecent liberties with a child from 1981.

6

Samuels either did not inform his attorney of this conviction or could not because of his mental deficiency. While an attorney should thoroughly investigate his client's criminal history, we do not hold Grimmett to be incompetent under these circumstances. Even if Grimmett were incompetent, his error did not affect Samuels' plea because the district court gave Samuels a chance to withdraw his plea after they learned that his second prior conviction implicated other sentencing statutes.

Samuels has failed to show manifest injustice to withdraw his guilty plea because Grimmett was incompetent.

*Treatment of Samuels*

Samuels presented no claim on this *Edgar* factor. Our review of the record reveals no evidence of Samuels being misled, coerced, mistreated, or unfairly taken advantage of.

*How the plea was made*

Samuels argues his plea was not fairly and understandingly made because of his limited intellect. Samuels cites *Peterson v. State*, 215 Kan. 253, 254, 542 P.2d 740 (1974), which says, "The requirement that a plea of guilt must be intelligently and voluntarily given to be valid has long been recognized by this court." Samuels has an IQ of 67, was in special education in school, and could not correctly spell his name. Samuels argues no reasonable person could conclude that he *intelligently* entered his no-contest plea. He argues it does not matter that the district court asked if he understood the plea before accepting it because he also lacked the mental capacity to understand the court's allocution.

We are unconvinced that Samuels did not have the mental capacity to understand his plea. He underwent two competency evaluations and was found competent to stand

7

trial both times. "Although a competency determination is not dispositive of whether a plea was knowingly and voluntarily made, . . . it does provide evidence that tends to contradict the defendant's contention that he was somehow mentally or emotionally disturbed to the point that he could not understand the plea proceedings." *State v. Morris*, 254 Kan. 993, 1005, 869 P.2d 739 (1994). The timing of these two evaluations done several months apart and by two evaluators is evidence that contradicts Samuels' position.

One case offers some guidance on this point In *State v. Shopteese*, 283 Kan. 331, 153 P.3d 1208 (2007), the Supreme Court dealt with a motion to withdraw a plea because of the defendant's mental deficiencies. In *Shopteese*, the defendant was diagnosed with psychotic disorder and mild mental retardation. He was twice found incompetent to stand trial. The defendant was eventually competent to stand trial and pleaded guilty to felony murder, aggravated robbery, and aggravated burglary.

At Shopteese's plea hearing the district court made many inquiries into his state of mind. The journal entry said that Shopteese understood the nature and consequences of his plea and his constitutional rights. Within two weeks, Shopteese wrote the district court several times asking to appeal his case and withdraw his plea. After a hearing, the district court denied his motion to withdraw plea.

On appeal, Shopteese argued that his marginal IQ and mental illness rendered his plea involuntary. The Kansas Supreme Court found that the plea was voluntary based on the district court's painstaking inquiry into the defendant's present condition and understanding of the plea—to which the defendant made appropriate responses—and the defendant's efforts to withdraw his pleas showed an understanding of his pleas and their consequences. 283 Kan. at 339, 341-43.

There are similarities here. Samuels was twice evaluated and found to be competent. At Samuels' plea hearing, the district court explained:

8

- what no contest means;
- Samuels' right to a trial and that he was giving up that right;
- Samuels' possible sentence—each time asking if Samuels understood.

The district court found that Samuels understood his rights and had sufficient advice of counsel. The district court noted that it took Samuels' most recent competency report into consideration and found that his plea was voluntarily and understandingly made.

Samuels chose to continue with his no-contest plea after the district court explained to him that he would likely be sentenced to either life without parole or life without parole for 50 years, a significantly worse sentence than the plea agreement contemplated. And unlike *Shopteese*, Samuels did not try to withdraw his plea until over two years after sentencing. Samuels said that his attorney did not explain to him that he could appeal his case or withdraw his plea. Samuels did not take any steps to appeal or withdraw his plea until his friends in prison helped him.

Going back to our standard of review, we hold that reasonable people could agree that Samuels' plea was fairly and understandingly made because the district court made sure he understood his rights and the consequences of his plea, his attorney thoroughly explained the plea to him, and he was found competent to stand trial. The district court did not abuse its discretion by denying Samuels' motion to withdraw his no-contest plea.

*We turn to Samuels' habeas corpus motion.*

When a district court conducts an evidentiary hearing on claims of ineffective assistance of counsel, we review the court's factual findings for substantial competent evidence and review the court's legal conclusions de novo. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

9

We examine claims of ineffective assistance of counsel in two steps according to the ruling in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, has the defendant shown that counsel's performance was deficient? To establish deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential. A court considering a claim of ineffective assistance of counsel must strongly presume that counsel's conduct fell within the wide range of reasonable professional assistance. *Khalil-Alsalaami*, 313 Kan. at 485.

Second, the court determines whether there is a reasonable probability that absent counsel's deficient performance, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 313 Kan. at 485.

Samuels argues that Grimmett's performance fell below an objective standard of reasonableness when he failed to challenge the admissibility of his confession. Samuels says his intellectual defect alone should have been reason for Grimmett to pursue a *Jackson v. Denno* hearing to determine the voluntariness of his statement to police. Samuels says there was even more reason to challenge his confession because he was under the influence of alcohol during his interrogation. Samuels argues that his intellectual defects combined with his intoxication prevented him from making a voluntary statement and, had Grimmett moved to suppress the statement, the results of his case would be different.

These allegations find no foundation in the record. The record shows that Samuels had a BAC of .069 when he was interrogated. He was 47 years old at the time. He had an IQ of 67, had graduated from high school, and had experience with law enforcement from his two prior convictions for indecent liberties with a child. There is no indication that he was not fluent in English. There is no information in the record about the manner and

10

duration of the interrogation, Samuels' ability to communicate with the outside world, and the officers' fairness in conducting the interrogation.

To determine the voluntariness of a statement to police, appellate courts examine all of the circumstances and several relevant factors:

> "'(1) The accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language.' [Citations omitted.]" *State v. Randolph*, 297 Kan. 320, 326, 301 P.3d 300 (2013).

Samuels has failed to show that any motion to suppress would be meritorious. Samuels does not allege that his intoxication affected his decision to confess to the police—he only states that he was intoxicated. He never alleged that he does not recall giving his confession. The district court's finding that his intoxication did not render his statement involuntary was supported by substantial competent evidence.

Samuels' low IQ alone was not enough to show his statement was involuntary. "While a defendant's low intellect and mental condition are factors to be considered in determining the voluntariness of a statement, a defendant's mental condition, by itself and apart from its relation to official coercion, should never dispose of the inquiry into constitutional voluntariness." *State v. Mays*, 277 Kan. 359, Syl. ¶ 11, 85 P.3d 1208 (2004). Samuels does not allege any coercion or misconduct by the police, or that they took advantage of his low IQ. The district court's finding that Grimmett was not ineffective for failing to move to suppress Samuels' statement was supported by substantial competent evidence.

Samuels also claims that Grimmett was ineffective for allowing him to enter a no-contest plea when he lacked the intellectual capacity to understand his plea. He says if

Grimmett advised the district court that he lacked the intellectual capacity, the district court would not have accepted the plea. Samuels says there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial but for Grimmett's errors.

Samuels did not raise this issue in his K.S.A. 60-1507 motion so there are no findings from the district court to review. We will not review this claim for the first time on appeal. See *State v. Johnson*, 309 Kan. 992, 995-96, 441 P.3d 1036 (2019).

Affirmed.